UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:10-CV-00157-JHM

CYNTHIA MAYNARD                                                                              PLAINTIFF

v.

AMERICAN MEDICAL AND LIFE INSURANCE CO.;
CINERGY HEALTH, INC.; AND
NATIONAL CONGRESS OF EMPLOYERS, INC.                                        DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants, American Medical and Life Insurance Co., Cinergy Health Inc., and National Congress of Employers, Inc.'s motions for summary judgment [DN 26, 27, 28]. Fully briefed, this matter is ripe for decision. For the following reasons, the Court **GRANTS** the Defendants' motions for summary judgment.

**I. STANDARD OF REVIEW**

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586

(1986). The rule requires the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by " showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

## II. BACKGROUND

On April 3, 2008, Cynthia Maynard purchased the Cinergy Preferred 1000 Plan from Cinergy Health Inc. ("Cinergy"). Cinergy had an agreement to market and sell limited medical benefit insurance plans that are offered through membership with National Congress of Employers, Inc. ("NCE") and are underwritten by American Medical and Life Insurance Co. ("American"). The Cinergy Preferred 1000 Plan was a medical plan with limited coverage, such as covering only four hospital admissions per year, a $1000 per day limit towards room and board of a hospital stay for 30 days per year, and a $100 limit for each of five office visits per year. Maynard first learned about Cinergy through television ads and spoke with a representative from Cinergy on March 24, 2008, inquiring about the Preferred 1000 Plan. After purchasing the Preferred 1000 Plan, Maynard again contacted a representative asking about reducing her premium. On June 24, 2008, Maynard wrote a letter to Cinergy and requested the Cinergy Preferred 500 Plan ("Plan"), which reduced her monthly payments as well as reducing her benefit coverage.

Maynard underwent a total hysterectomy on May 7, 2009. Prior to the scheduled outpatient surgery, both Maynard and the doctor's office contacted Cinergy to determine what costs were covered under the Plan. For outpatient surgeries, the Plan covered 80% of the Medicare rate for

2

covered procedures as long as the procedure required an anesthesiologist to administer anesthesia. Outpatient facility charges, however, were not covered under the plan. Complications arose during the procedure and Maynard was admitted to the hospital for emergency surgery. American paid $3,603.90 of Maynard's bills for the procedure and emergency surgery, leaving Maynard with well over $30,000 in medical bills.

On March 19, 2010, Maynard filed this action against Cinergy, NCE, and American (collectively "Defendants") in Daviess Circuit Court. The action was removed to the Western District of Kentucky on December 29, 2010. In her Complaint, Maynard asserts a breach of contract claim against American and Cinergy, a claim for unfair, false, misleading or deceptive acts under the Kentucky Consumer Protection Act against Defendants, and a claim against Defendants for engaging in a conspiracy to illegally issue health insurance polices. Defendants filed motions for summary judgment, each stating that Maynard has failed to raise genuine issues of material fact to support her claims.

### III. DISCUSSION

In her response, Plaintiff concedes that summary judgment on her conspiracy claim is appropriate. Therefore, this Court will address only the breach of contract claim and the Kentucky Consumer Protection Act claim.

**A. Breach of Contract**

In her Complaint, Plaintiff asserts that American, Cinergy, or both, breached the contract with Plaintiff by failing to indemnify her as required by the explicit and implicit terms of the contract.

American states that it paid all expenses that it was required to pay under the Plan and Maynard has

3

failed to produce any evidence or basis for a breach of contract claim. In response, Plaintiff acknowledges that the coverage was limited but states for the first time that the policy provides additional benefits for injuries that are the result of an "accident." She claims that she was injured due to a surgical error and argues that an "accident" entitles her to additional benefits.

Although American and Cinergy take issue with the fact that Maynard never asserted an "accident" theory under the Plan during the course of discovery, the Court finds that, construing the Complaint in light most favorable to Maynard, her breach of contract claim is broad enough to include such an allegation. However, Maynard has provided the Court with no evidence regarding her surgery or the complications that arose from the surgery. Gathering information from Defendants' briefs, the Court acknowledges that Maynard was to undergo an outpatient surgery, complications arose, and she was hospitalized for two to three days. Maynard states the complication was a surgical error, but she provides no facts, medical records or expert opinion testimony regarding her procedure. As stated previously, Rule 56 requires the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by " showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252. Cinergy and American have provided proof of payment of a portion of Maynard's bills and provided an affidavit from an officer of American that American paid as required under the terms of the Plan. Maynard points to nothing in the record to support her claim that her expenses were the result of an "accident" under the Plan which would entitle her to additional benefits. Therefore, she has failed to

raise a genuine issue of fact and the Court finds that summary judgment is appropriate on Maynard's breach of contract claim.

### B. Kentucky Consumer Protection Act

Maynard next alleges in her Complaint that Defendants' television advertisements constituted unfair, false, misleading or deceptive acts or practices because they (1) failed to disclose that the policy was group coverage, requiring membership in NCE; (2) would lead a reasonable person viewing the advertisement to believe that the policy was a group insurance rather than individual health insurance policy; (3) would lead a reasonable person viewing the advertisement to believe that the policy provided substantially greater benefits; and (4) would lead a reasonable person viewing the advertisement to believe that the insurer was Cinergy rather than American.

The Kentucky Consumer Protection Act makes "unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce" unlawful. KRS § 367.170(1). The terms "false, misleading and deceptive" are given their ordinary meaning as "understood by a reasonably prudent person of common intelligence." Stevens v. Motorists Mut. Ins. Co., 759 S.W.2d 819, 820 (Ky. 1988). An individual may bring a cause of action under the Consumer Protection Act if they purchase a good or service "primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of . . . [an] act or practice declared unlawful by KRS 367.170[.]" KRS § 367.220. The purchase of an insurance policy has been found to be a purchase of a "service" under the KCPA. See Stevens, 759 S.W.2d at 821.

Defendants argue that no evidence exists supporting Maynard's claim that unfair, false misleading and deceptive television advertisements caused her damage. In support of their argument, Defendants state that Maynard remembers seeing Cinergy television advertisements, but

does not remember which advertisements she viewed and can not articulate false, misleading, or deceptive text or comments made in the advertisements. (Maynard Dep. 46 [DN 26-2].) Furthermore, Defendants contend that the advertisements did not cause her substantial damage. They state the advertisements only prompted her to call Cinergy to inquire about insurance, not actually purchase a limited medical benefit plan. As evidence that Maynard was not under a false impression of the terms of the Plan, they provide transcripts of Maynard and a Cinergy representative discussing the limited nature of the coverage. They reason that even if Maynard was misled by an advertisement, she was not under any false impression after her discussions with Cinergy representatives, and therefore, any damage suffered was not a result from a television advertisement.

In order to prevail on her claim under KCPA, Maynard must show that she suffered damages as a result of unfair, false, misleading, or deceptive claims in a television commercial. Maynard has provided a December 31, 2009, Kentucky Department of Insurance Market Conduct Examination of American Medical and Life Insurance Company that found "that the television advertisements used by the defendants were deceptive." (Pl's Response to Mot. Sum. J., 1 [DN 29].) She states that these findings "are not dispositive in themselves, [but] are a strong indication supporting this claim." (Id. at 2.) Maynard concludes that the findings of the Kentucky Department of Insurance and other "reviewing authorities" presents a question of fact for the jury regarding Defendants' violations of the Kentucky Consumer Protection Act. (Id. at 1.)

The Kentucky Department of Insurance looked at four television commercials. The findings were critical of the fact that the commercials did not clearly reveal the limited nature of the benefits or that American was the insurer. Even if these findings were sufficient to raise a question as to

whether the claims were deceptive, Maynard must also show she suffered damage as a result. Maynard is unable to recall the content of the advertising she saw, thus, she is unable to show that she relied on any of it in deciding whether to purchase the Plan. The advertising did prompt her to inquire further. Maynard, an attorney who once worked for the Kentucky Department of Insurance, spoke with Cinergy representatives about obtaining the limited health insurance plan. The record provides transcripts of conversations that Maynard had discussing the differences between a limited plan and a major medical plan. [DN 26-4; 28-6]. She elected to purchase the plan. She then elected to cancel her original plan, in order to purchase a more limited plan, acknowledging in a letter to Cinergy that she understood that the reduced plan would provide even more reductions in benefit coverage. [DN 28-3]. She clearly understood she was purchasing a limited plan and she has not shown that she was mislead to her detriment by any advertising claims.

Therefore, Maynard's KCPA claim must fail as well. The Court finds that no issues of material fact exist as to whether Maynard suffered any damages as the result of unfair, false, misleading or deceptive acts in Defendants' television commercials. Summary judgment is granted on the KCPA claim.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the Defendants' motions for summary judgment are [DN 26, 27, 28] are **GRANTED**. A judgment will be entered consistent with this opinion.

*Joseph H. McKinley*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc: counsel of record

July 2, 2012